UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.: 14-CV-20625 Moore/Torres

State Farm Mutual Automobile Insurance
Company and State Farm Fire & Casualty
Company

    Plaintiffs,

v.

Medical Service Center of Florida, Inc.,
Medical Diagnostic Center of Florida, Inc.,
Lourdes Diaz and Edel Perez Diaz,
    Defendants

**DEFENDANTS MOTION TO STRIKE
THE EXPERT REPORT OF SONEET KAPILA
AND "DAUBERT" MOTION
<u>With MEMORANDUM OF LAW</u>**

    Defendants, Medical Service Center of Florida, Inc. (hereinafter referred to as "MSCF"), Medical Diagnostic Center of FL, Inc. ("MDCF"), Lourdes Diaz ("Diaz") and Edel Perez ("Perez"), (collectively referred to as "Defendants"), by and through their undersigned attorney of record, respectfully moves the Court to exclude Plaintiffs, State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company's ("Plaintiffs" or "State Farm") proposed expert witness: Soneet Kapila. The issues here are not merely ones of credibility best that can be asserted and deciphered during examination and cross-examination, but rather of reliability and relevancy within the field of expertise. In other words this expert and his opinion does not provide any clarity to the trier of fact and does not move the issue forward one step.

1

Plaintiffs' Expert Report must be excluded for two reasons.  First, State Farm produced its expert report after the close of business at 6:46 pm on the last day of discovery.  Second, the expert report failed the Daubert test, and as such must be excluded.

On February 06, at 6:46 pm, one hour and forty five minutes after the close of business on the last day of Discovery cutoff period, Defendants received State Farm's Expert Witness Report.  As a result, Defendants will never have the opportunity to depose Plaintiffs' Expert Witness, or file a response to State Farm's Report.  State Farm has previously conveyed to Defendants that it was entertaining the idea of an expert witness, but was not definite in that decision.  Defendants are gravely prejudiced by these tactics and requests that Soneet Kapila and his report be excluded from testifying in this matter.

> Local Discovery Rule 26.1.F(1)(b) provides as follows:  A party may depose any person who has been identified as an expert whose opinions may be presented at trial.. The deposition shall not be conducted until after the expert summary or report required by Local Rule 16.1.K. is provided.

In this instance, Defendants are precluded from taking State Farm's Expert Witness' deposition as the discovery period has run out.  In order to avoid an injustice to be perpetrated upon Defendants, this Court must throw out the State Farm's expert report and exclude Soneet Kapila from testifying in this case.  This expert report must be stricken for being filed outside of the discovery period.  OFS Fitel, LLC v. Epstein, Becker & Green, P.C., 549 F.3d 1344 (11th Cir. 2008)(the expert must be deposed before the close of discovery, the report must come before the expert's deposition, and therefore the expert's report necessarily must come before the close of discovery); Dyett v. North Broward Hosp. Dist., Not Reported in F.Supp.2d (S.D.Fla.,2004).

Second, State Farm provided an "expert" report that clearly fails the test of Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) and United States v. Frazier, 387 F.3d 1244 (11th Cir. 2004)  As the Eleventh Circuit held in Frazier, 387

F.3d 1244, simply because the Defendants have evidence in an area does not mean that State Farm is entitled to or even needs to call an expert in that area without meeting the requirements of *Daubert*.  This is precisely the kind of case where the court must exclude proposed experts whose testimony, far from helping the trier of fact, is meant to waste valuable time and will only serve to prejudice the Court.

The expert report does not add any value to the resolution of the case.  Defendants have already conceded, and it was established profusely in deposition, that Diaz and Edel have received 100% of the profits from MSCF and MDCF respectively in greater proportion than Hernandez, who has agreed to receive $1,200 and $860 per month from MSCF and MDCF respectively.  It is already further stipulated that Hernandez could not write checks because he was not on the clinics' bank accounts.  For the expert witness to repeat the same numbers does not help the trier of fact or move the issue forward.  As such Exhibits B, B.1, C, and C.1 as relates to the bank reconstructions and Cash transactions between the clinics and Diaz and Perez does nothing to help the Court.

Conversely, the expert report seeks to prejudice the trier of facts.  It only serve to show to the jurors, surreptitiously, how much money have been going to Defendants Diaz and Perez from the clinics throughout the years.  This is exactly the same prejudice State Farm is attempting to keep out when it filed a motion *in limine* seeking to prevent Defendants from portraying State Farm as this mammoth financial giant in the world's insurance markets.  If being a financial giant prejudices State Farm, the same can be said of Defendants being prejudiced by throwing these numbers in the face of the jury.

The Expert Report specifically targets years of cash deposits in the personal accounts of the Defendants.  Exhibit D – Lourdes Diaz Bank reconstruction; Exhibit D.1 – Diaz Cash

Deposit Analysis; Exhibit E – Edel Perez Diaz Bank Reconstruction; Exhibit E.1 – Perez Cash Deposit Analysis.  By throwing these somewhat large cash deposits being made in the personal accounts of Diaz and Perez, it will surely invoke adverse inferences, suggestions, implications and innuendoes of money laundering, tax evasion, structuring, improper transfers and such other thoughts as may negatively impact the Defendants.

## MEMORANDUM OF LAW

A district court serves a critical role as the "gatekeeper" to the admission of expert testimony.  Daubert, 509 U.S. at 589; Frazier, 387 F.3d at 1258.  The gatekeeping obligation set forth in Daubert, 509 U.S. 579 applies with equal force to all types of proposed expert testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999).  That obligation also applies fully to a Plaintiff's proposed expert testimony, however important to the defense that testimony supposedly may be.  See, e.g., United States v. Henderson, 409 F.3d 1293, 1302-04 (11th Cir. 2005) (affirming exclusion of defendant's proposed expert testimony); Frazier, 387 F.3d at 1260, 1271-72(same, emphasizing that a criminal defendant's constitutional and procedural rights do not entitle him to a lower standard for the presentation of expert opinion evidence); United States v. Cunningham, 194 F.3d 1186, 1196 (11th Cir. 1999) (same); United States v. Gilliard, 133 F.3d 809, 814-16 (11th Cir. 1998)(same).

The district court's gatekeeping function "inherently require[s] the trial court to conduct an exacting analysis of the foundations of expert opinions to ensure they meet the standards for admissibility under" Fed. R. Evid. 702.  Frazier, 387 F.3d at 1260.  To determine whether expert evidence is admissible, trial courts must consider whether: (1)  the expert is qualified to testify competently regarding the matters he intends to address; (2)  the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry

4

mandated in Daubert, 509 U.S. 579; (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue; and (4) the testimony passes the Fed. R. Evid. 403 balancing test, in that its probative value must not be substantially outweighed by its unfairly prejudicial effect. See Id. at 1260, 1263(citing Daubert, 509 U.S. 579).

      The proponent of the testimony, not the party challenging it, has the burden of establishing each of these requirements. See Id. at 1260; McClain v. Metabolife Int'l, Inc., 401 F.3d 1233, 1238 n.2 (11th Cir. 2005). And each of these requirements has significance. The first prong of the analysis – whether the expert is qualified – ensures that the proposed expert's skills and education are not merely adequate generally, but actually relate to specific opinions he or she proposes to offer. "An expert's opinion is helpful only to the extent the expert draws on some special skill, knowledge, or experience to formulate that opinion; the opinion must be an expert opinion (that is, an opinion formed by the witness' expertise) rather than simply an opinion broached by a purported expert." United States v. Benson, 941 F.2d 598, 604 (7th Cir. 1991). Thus, an expert may be highly qualified to respond to certain questions and to offer certain opinions, but insufficiently qualified to respond to other, related questions, or to opine about other areas of knowledge. See, e.g., Smelser v. Norfolk S. Ry. Co., 105 F.3d 299, 303 (6th Cir. 1997)("When making a preliminary finding regarding an expert's qualifications under Fed. R. Evid. 104(a), the court is to examine not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question.") (citations and internal quotation marks omitted).

      The second prong of the analysis – the reliability of the proposed testimony – is meant to ensure that testimony from an expert, even if otherwise qualified, is sufficiently well-founded

5

and trustworthy to be presented to the jury. In ascertaining the reliability of a particular expert opinion, courts consider (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. See, e.g., McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir. 2002) (citing Daubert, 509 U.S. at 593-94). As the Eleventh Circuit has made clear, "testimony based solely on the experience of an expert [is] not [] admissible. The experts' conclusions must be based on sound scientific principles and the discipline itself must be a reliable one." Rider v. Sandoz Pharm. Corp., 295 F.3d 1194 (11th Cir. 2002).

In Frazier, 387 F.3d 1244, the Eleventh Circuit used these principles to exclude a defense expert who sought to offer opinions based largely upon his experience. In that case, the defendant proposed expert testimony regarding the likelihood that hair or fluids would be transferred during sexual contact of the kind alleged in the indictment. The district court excluded that testimony, and the Eleventh Circuit affirmed. Judge Marcus, writing for the *en banc* court, explained that the defense did not marshal any hard evidence for the proposed opinion or peer reviews validating it. Moreover, the defense could not get away with tying the expert's opinion to his purportedly vast experience: Since the expert was relying solely or primarily on his experience, it remained the burden of the proponent of this testimony to explain how that experience led to the conclusion he reached, why that experience was a sufficient basis for the opinion, and just how that experience was reliably applied to the facts of the case. Again, "[t]he court's gatekeeping function requires more than simply 'taking the expert's word for it.'" Fed. R. Evid. 702 advisory committee's note (2000 amends.). Frazier, 387 F.3d at 1245.

The third prong of the analysis – whether the proposed testimony will help the jury – asks a different question: will the expert's opinion truly aid the jury in resolving the issues genuinely before it? Expert testimony, like all evidence, must be relevant. See Fed. R. Evid. 401, 402. Unlike ordinary testimony, however, expert testimony must do more; it must also "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. As the Eleventh Circuit has explained, "more stringent standards of reliability and relevance . . . are necessary because of the potential impact on the jury of expert testimony." Allison v. McGhan Med. Corp., 184 F.3d 1300, 1309 (11th Cir. 1999). Courts therefore must "ensure that the proposed expert testimony is relevant to the task at hand [and] that it logically advances a material aspect of the proposing party's case." Id. at 1311(internal quotation marks omitted) (citing Daubert, 509 U.S. 579).

The fourth and final prong of the analysis is a variation on Fed. R. Evid. 403. That rule allows a court to exclude evidence where its probative value is substantially outweighed by the risk that the evidence will confuse or mislead the jury or delay the trial by injecting collateral disputes. The rule applies to all evidence, but applies with greater force to proposed expert testimony because of weight jurors may be inclined to give testimony given in the capacity of an expert. See Allison, 184 F.3d at 1309; see also Daubert, 509 U.S. at 595("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses.") (citation and internal quotation marks omitted).

## ARGUMENT

The so called Expert Report prepared by Soneet Kapila ("Kapila") is nothing but an exercise in addition. In fact, the objectives of the report was to quantify the amount of funds that Defendants, Lourdes Diaz, Edel Perez and Dr. Hernandez received from MSCF and MDCF. The report does not make any exceptions, reservations or itemizations. In order to compile the prejudicial effect to the Defendants, no itemization is made for wages, salaries, distributions, dividends, reimbursements, loans, *inter alia.*

Let's imagine, giving State Farm the benefit of the doubt, that this Report will be used to discredit and impeach the Defendants' allegations that Hernandez was an owner – that expert report does nothing to advance that theory. The court and the Defendants are able to perform simple mathematical additions and are able to add numbers. State Farm will have to obtain an expert that deals in that type of matter. The Defendants should not be forced to spend their limited funds to depose, counter and cross-examine such an expert. It is an exercise in futility. The true use of the Expert Report is to prejudice the Defendants by mentioning to the jury large sums of money that they have received from the operation of the clinics. **Simply put, the receipt of the profits from MSCF and MDCF is not even a contested issue.**

This Expert Report misses by a wide margin the four-prong test for admissibility of an expert report. First, by his own admission within the body of the Expert Report, neither by experience nor education, there is no equity in his "qualifications"[1] that gives Kapila any expertise in matters of Corporate Structure and Corporate Ownership. He has not laid out any peer study, legal theory, SEC reports, Business Articles. Nothing at all. More importantly he has not considered the filing from the State of Florida, Division of Corporations, where Hernandez is listed as owner and President for the affected period. He has omitted any

---

[1] See Section III. Qualifications of Expert Report, dated February 6, 2015.

ownership paper submitted to AHCA.  Kapila is insufficiently qualified to issue opinion with regards to corporate structures and ownership theories.  He does not stand out as having any such knowledge or experience.

It baffles the Defendants that Kapila's objectives were to quantify payments received by Diaz, Perez and Hernandez, yet, Kapila, exceeding the scope of his objectives, issues an unqualified opinion that "[t]here is no evidence in the financial records that Hernandez had ownership interest in MSCF." That unsolicited opinion falls outside of the objectives of the Expert Report and outside of the field of expertise of Kapila.

The second element of Expert Evidence admissibility deals with the methodology by which the expert reaches his conclusions.  The Court must determine whether it is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*.  **There is neither theory nor methodology in the Kapila Report** – just first grade additions.  Kapila has not offered any methodology to support his conclusions or deductions.

The third prong of the admissibility of Expert Report goes to whether the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.  Here, this Expert Report has no application, whether scientific, technical or specialized.  It does not even advance the theory of State Farm that Dr. Hernandez was not an owner.  The objectives of the Report were to "quantify" the amount of money received by the three actors.  Admittedly, Kapila used *addition* as a mathematical formula and accurately shows the distribution received by Diaz, Perez and Hernandez.  That alone does not assist the Court in understanding the issue.

Lastly, the fourth prong is whether the testimony passes the Fed. R. Evid. 403 balancing test, in that its probative value must not be substantially outweighed by its unfairly prejudicial

9

effect.  If there is one element advanced by the Kapila Report is its prejudicial effect that it will bear upon the trier of fact.  By repeating the large flow of funds going to the Defendants to the jurors, State Farm hopes to prejudice the jury.  Maybe that is the real intent of the Expert Report.  It shows that Diaz and Hernandez, two lesser educated entrepreneurs receiving considerable sums of distributions from MSCF and MDCF.  That is prejudicial.

## CONCLUSION

In conclusion, the Expert Report filed by Soneet Kapila must be striken because it not only prejudices the Defendants by being filed on the last day of discovery cutoff, over an hour past the close of business, it also prejudices the Defendants by its effect on the trier of facts.  Its prejudice outweighs its probative value.  Finally, it does not helps the Court in understanding the sophisticated issues before it.  As such, it must be excluded.

Dated:  February 27, 2015.

By: /s/***Anthony M. Genova, Esq.***

Anthony M. Genova, Esq.
Florida Bar No.: 637130
Attorney for Defendants

## **LOCAL RULE 7.1 CERTIFICATION**

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that on February 24, 2015 counsel for Defendants conferred with counsel for State Farm regarding the contents of the instant Response, but the two were unable to resolve the issued identified herein.

Dated:  February 27, 2015

Respectfully Submitted

By: /s/***Anthony M. Genova, Esq.***
Attorney for Defendants

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on February 27, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/***Anthony M. Genova, Esq.***

Anthony M. Genova, Esq.
Florida Bar No.: 637130
Attorney for Defendants

## SERVICE LIST

**State Farm Mutual Automobile Insurance Company and
State Farm Fire & Casualty Company**

v.

**Medical Service Center of Florida, Inc., Medical Diagnostic Center of Florida, Inc.,
Lourdes Diaz and Edel Perez Diaz.**

Case No.: **14-CV-20625 Moore/Torres**

United States District Court, Southern District of Florida

David Ira Spector
Akerman LLP
222 Lakeview Avenue
Fourth Floor Esperante
West Palm Beach, FL 33401
561-653-5000
Fax: 561-659-6313
Email: david.spector@akerman.com

Sandra Lynn Heller
Akerman Senterfitt
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, FL 33301
954-463-2700
Email: sandra.heller@akerman.com

[Counsel for State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company]

ANTHONY M. GENOVA, ESQ.
FBN: 637130
Anthony Meehan Genova, P.A.
The Biscayne Building
19 West Flagler Street, Suite 802
Miami, Florida 33130
Phone:   305.379.6000
eFax:     305.675.0236
Primary email:
**agenovalaw@gmail.com**
Secondary emails:
jdgenova@gmail.com
ap.agenovalaw@gmail.com

GARY S. GLASSER, P.A.
Co-Counsel for all Defendants
28 West Flagler Street, Suite 608
Miami, Florida 33130
Tele: (305) 377-4187
Fax:  (305) 358-7587
Email: GSG50@msn.com


[Counsels for Medical Service Center of Florida, Inc., Medical Diagnostic Center of Florida, Inc., Lourdes Diaz and Edel Perez Diaz]