## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 14-cv-20625-KMM

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE
FARM FIRE & CASUALTY COMPANY,

      Plaintiffs,

vs.

MEDICAL SERVICE CENTER OF
FLORIDA, INC., MEDICAL DIAGNOSTIC
CENTER OF FLORIDA, INC., LOURDES
DIAZ, and EDEL PEREZ DIAZ,

      Defendants.

_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Plaintiffs' Motion for Summary Judgment

(ECF No. 99).  Defendants filed a Response (ECF No. 107), and Plaintiffs filed a Reply (ECF

No. 116).  THIS CAUSE also came before the Court upon Defendants' Motion for Summary

Judgment (ECF No. 102).  Plaintiffs filed a Response (ECF No. 113), and Defendants filed a

Reply (ECF No. 118).  The Motions are now ripe for review.  UPON CONSIDERATION of the

Motions, the Responses, the Replies, the pertinent portions of the record, and being otherwise

fully advised in the premises, for the reasons set forth below, the Court now enters the following

order.

## I.      BACKGROUND

Florida law requires that all health care clinics be licensed by the Agency for Health Care

Administration ("AHCA"), unless they qualify for an exemption.  Fla. Stat. § 400.991 (2009).

One such exemption applies if the clinic is "wholly owned" by a licensed health care practitioner

1

who supervises the business activities and is legally responsible for the entity's compliance with all federal and state laws.  See Fla. Stat. § 400.9905(4)(g).  Florida law also provides that an insurer is required to provide reimbursement to health care clinics only for medical benefits that are "lawfully provided."  See Fla. Stat. § 627.736(1)(a)(1); see also Fla. Stat. § 627.736(5)(b)(1)(b) ("An insurer or insured is not required to pay a claim or charges . . . for any service or treatment that was not lawful at the time rendered.").

Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company (collectively, "Plaintiffs" or "State Farm") seek to recover the amounts paid to Defendants Medical Service Center of Florida, Inc., Medical Diagnostic Center of Florida, Inc., Lourdes Diaz, and Edel Perez Diaz (collectively, "Defendants") based upon violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and a claim of unjust enrichment (Count I and II).  State Farm further seeks a declaratory judgment confirming that State Farm is not obligated to pay any of Defendants' bills to the extent they remain unpaid (Count III).[1]

Defendant Medical Service Center of Florida, Inc. ("MSCF") and Defendant Medical Diagnostic Center of Florida, Inc. ("MDCF") are Florida corporations located in Miami.  Compl. at ¶¶ 5–6.  Defendant Lourdes Diaz ("Diaz") is a citizen of Florida living in Miami-Dade County.  Diaz is not a licensed medical professional in Florida.  Id. at ¶ 7.  Defendant Edel Perez Diaz ("Perez") is a citizen of Florida living in Miami-Dade County.  Id. at ¶ 8.  Perez was not a licensed medical professional in Florida until August 31, 2010, at which time he became a licensed massage therapist.  Defs.' Answer at ¶ 8.

---

[1] Defendants filed a counterclaim, alleging claims for open account, account stated, services provided, breach of contract, and unjust enrichment, wherein Defendants seek payment for the outstanding bills.  Defs.' Counterclaim (ECF No. 36).

MSCF was formed by Diaz in 2000, with Diaz designated as the owner and President. Id. at ¶ 30. Diaz represented to the AHCA that she was the 100% owner of MSCF from the date MSCF was formed until November 2009, at which point Miguel Hernandez ("Hernandez"), a licensed medical doctor who was hired by Diaz in 2008, allegedly became the owner of the clinic. Id. at ¶¶ 30–35. MDCF was formed in February 2009, with Hernandez designated as the President, Incorporator, and Registered Agent, and with Perez designated as the Vice President. Id. at ¶ 48.

State Farm's claims are based on two separate time periods during which State Farm asserts MSCF and MDCF were unlawfully operated: (1) the "exemption period," between 2009 and 2010, during which time the clinics operated on an exemption from licensure based upon the representation that the clinics were wholly owned by Hernandez; and (2) the "licensure period," between 2010 and 2011, during which time Defendants obtained healthcare clinic licenses based on false representations of ownership and sales of the clinics from Hernandez to Perez.

### a. Exemption Period[2]

In 2009, Diaz ran into legal trouble and could not renew MSCF's license under her name.[3] Defs.' Reply at 3. Defendants subsequently obtained exemptions from clinic licensure from Florida's AHCA for MSCF and MDCF by representing that Hernandez wholly owned both clinics. Id. at ¶¶ 9, 11, 35, 50. State Farm maintains that these representations were false, and therefore, the clinics unlawfully obtained payments from State Farm and other insurers throughout this period. Id. at ¶¶ 9, 84–86.

---

[2] The relevant "exemption period" is from November 30, 2009 through August 5, 2010 for MSCF, and from June 8, 2009 through August 16, 2010 for MDCF.

[3] Under Florida law, an individual convicted of insurance fraud cannot be a clinic owner. Fla. Stat. §§ 408.809(5)(i), 408.815(4)(1). The record reflects that Diaz pled guilty to insurance fraud in October 2009 and the matter was expunged from Diaz's record several months later. Pls.' SOF at 18.

Defendants contend that Diaz had planned to close the MSCF clinic after she ran into legal trouble, but was convinced by Hernandez to transfer ownership of MSCF to him. Defs.' Reply at 4. Defendants claim that after Hernandez made his offer, Diaz transferred her stock in MSCF to him so that he could apply for the exemption. Id. As everything was done quickly, Defendants decided other actions, "such as putting him on the bank accounts and figuring out a fair distribution of the profits," would wait until the next tax year. Id. However, Hernandez testified at his deposition that, in fact, Diaz had asked him if he would mind being the owner of MSCF as a favor while Defendants opened a second clinic (MDCF). Hernandez Dep., at 70 (ECF No. 75-1). Hernandez testified that Diaz asked him to sign paperwork, including several forms that were given to him blank.[4] Id. Hernandez further testified that he did not pay Defendants any money for the clinic. Id. at 72.

State Farm further maintains that Hernandez never wholly owned MDCF, the second clinic opened in February 2009. Defendants state that Hernandez started MDCF with money borrowed from Diaz, became its sole shareholder, and subsequently signed the AHCA Application for Certificate of Exemption from Licensure as a Health Care Clinic. Defs.' SOF, at 5-6. Hernandez testified, however, that he did not start the second clinic, that he did not believe his "favor" to Diaz extended to the new clinic, and that he was unaware that his signature was on MDCF paperwork or that he had been named as the President of MDCF. Hernandez Dep. at 103–108.

---

[4] Hernandez's name and signature appear on the Application and Exemption from Licensure which were submitted to the AHCA. However, Hernandez states that he did not intend for a representation to be made that he owned the clinics. Compl., at ¶¶ 36, 52. Hernandez testified in his deposition that he agreed to "be the owner on paper" for MSCF for a few weeks as a "favor" to Diaz. Hernandez Dep., at 70. Hernandez further testified that he never agreed to the same arrangement for MDCF. Id. at 103.

**b. Licensure Period[5]**

On February 13, 2010, Hernandez voluntarily surrendered his medical license after an

Administrative Complaint was filed by the Department of Health, Board of Medicine against

him.  See Voluntary Relinquishment of Medical License (ECF No. 95).  Defendants

subsequently submitted Applications for Health Care Clinic License to the AHCA on March 1,

2010 and March 11, 2010, for MSCF and MDCF, respectively.  See Applications for Health

Care Clinic License (ECF Nos. 95-4, 95-9).  The AHCA rejected the Applications pending

receipt of documentation reflecting transfer of ownership from Hernandez, whom AHCA

believed to be the sole owner of the clinics.  See Letter from ACHA to MDCF (ECF No. 95-10).

Specifically, the letter stated:

> Change of Ownership: This clinic has an existing certificate of
> exemption as a health care clinic based on sole ownership by Dr.
> Miguel Hernandez. Provide the final transfer/sale documents
> which indicate the date of transfer and signed by both of the seller
> and buyer. If the sale has not yet taken place, please contact our
> office.

Id.  Perez responded to this letter stating that the change of ownership had not occurred yet.  See

Letter from Perez to AHCA (ECF No. 95-11).  Perez and Diaz subsequently obtained clinic

licenses for both MSCF and MDCF predicated upon representations to AHCA that a valid sales

transaction had taken place for both clinics.  Compl., at ¶ 10.  Based on their representations,

MSCF and MDCF were issued healthcare clinic licenses.  Id. at ¶¶ 44, 59.  State Farm asserts,

however, that in actuality, (1) Hernandez had no ownership interest to convey; (2) Hernandez's

signature that appears on the sales document is forged; and (3) no money was actually exchanged

as represented in the sales document.  State Farm maintains that Defendants were the actual

---

[5] The relevant "licensure period" for MSCF is from August 6, 2010 through the present day, and
for MDCF is from August 17, 2010 until it notified AHCA that it was closing on August 9, 2011.

owners of MSCF and MDCF at all relevant times.  Pls.' Resp. to Defs.' SOF at 3.  As the license applications were false and misleading, State Farm maintains they were void <u>ab initio</u>.[6]  Pls.' Mot. for Summ. J. ("Pls.' Mot.") at 16.

     **c.  Motions for Summary Judgment**

     On February 27, 2015, Plaintiffs filed their Motion for Summary Judgment, asserting that summary judgment should be entered in their favor on all counts.  Plaintiffs maintain that there is no genuine issue of material fact that the clinics did not qualify for any applicable exemptions from the mandatory licensure requirement, as they were never wholly owned by Hernandez. Pls.' Mot. at 3.  Plaintiffs further assert that there is no genuine issue of material fact that the licenses subsequently obtained by the clinics were issued by the AHCA in reliance on fake documents and representations.  <u>Id.</u>  Accordingly, Plaintiffs maintain that the exemptions, and later, the licenses, were invalid, and Plaintiffs are entitled to summary judgment on their claims to recover approximately $901,000 in personal injury protection ("PIP") benefits paid to Defendants and are entitled to a declaration that Plaintiffs are not obligated to pay approximately $92,000 in outstanding bills.  <u>Id.</u>

     Also on February 27, 2015, Defendants filed their own Motion for Summary Judgment. Defendants maintain that (1) Hernandez wholly owned MSCF outright and wholly owned MDCF between February 2009 and February 13, 2010, Defs.' Mot. for Summ. J. ("Defs.' Mot.") at 6–8; (2) State Farm's interpretation of "lawfully provided" contravenes generally accepted standards of statutory interpretation and the intent of the legislature, <u>id.</u> at 9–11; (3) the statutory exemption set out in Florida Statutes Section 501.212(4)(a) precludes State Farm from pursuing

---

[6] The AHCA filed a sworn affidavit of its Unit Manager of the HealthCare Clinic Licensure Unit testifying that it relied upon the applications and submissions from Defendants, and would never have issued licenses had they known they had been false, fraudulent, or misleading.  Jones Aff. at 11–13 (ECF No. 88).

a claim for violations of the FDUTPA, id. at 11–14; (4) Defendants provided adequate

consideration for payment, and therefore, State Farm cannot state a claim for unjust enrichment,

id. at 14–16; and (5) a declaratory action is not the appropriate vehicle to resolve the question of

whether State Farm properly refused to pay Defendants' outstanding invoices, id. at 16–17.

Defendants also assert that they have established clear cases of breach of contract, account

stated, open account, service provided, and unjust enrichment against Plaintiffs, and therefore,

entry of summary judgment in Defendants' favor is appropriate.  Id. at 17–18.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56; see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "Where the record taken

as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

'genuine issue of material fact.'"  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

U.S. 574, 587 (1986).  The Court must view all evidence and all factual inferences reasonably

drawn from the evidence in the light most favorable to the non-moving party and resolve all

reasonable doubts about the facts in favor of the non-movant.  Stewart v. Happy Herman's

Cheshire Bridge, Inc., 117 F.3d 1278, 1285 (11th Cir. 1997).

The movant bears the initial burden of proof.  Celotex, 477 U.S. at 323.  A party may

support its assertion that there is no genuine issue of material fact by "citing to particular parts of

materials in the record, including depositions, documents, electronically stored information,

affidavits or declarations, stipulations (including those made for purposes of the motion only),

admissions, interrogatory answers, or other materials" or by "showing that the materials cited do

not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324–25 (internal quotations and citations omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. Id. at 322, 324–25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) (stating that "conclusory allegations without specific supporting facts have no probative value").

## III.   ANALYSIS

### a.  Florida Health Care Clinic Act

Florida's Health Care Clinic Act ("HCCA"), Fla. Stat. §§ 400.990 et seq., requires that all health care clinics be licensed by the AHCA unless they qualify for an exemption. Fla. Stat. § 400.991. The express purpose of the HCCA "is to provide for the licensure, establishment, and enforcement of basic standards for health care clinics and to provide administrative oversight by [the AHCA]." Fla. Stat. § 400.990(2). The HCCA also incorporates the licensure requirements of the Health Care Licensing Procedures Act, Fla. Stat. §§ 408.801 et seq., which recognizes that "[u]nlicensed activity constitutes harm that materially affects the health, safety, and welfare of clients." Fla. Stat. § 408.812(2). Accordingly, "it is unlawful to provide services that require

8

licensure . . . without first obtaining . . . a license." Fla. Stat. § 408.804.  The HCCA mandates that "all charges or reimbursement claims made by or on behalf of a clinic that is required to be licensed under this part, but that is not so licensed . . . are unlawful charges, and therefore are noncompensable and unenforceable."  Fla. Stat. § 400.9935(3).

The HCCA allows for certain exemptions from mandatory licensure.  One such exemption provides that a clinic is not required to be licensed if it is "wholly owned by one or more licensed health care practitioners."  Fla Stat. § 400.9905(4)(g).  In order to lawfully qualify for the exemption, the licensed health care practitioner has a continuing obligation to supervise the business activities of the clinic and remain legally responsible for the entity's compliance with all federal and state laws.  Id.  The relevant section provides:

> the licensure requirements of this part [the HCCA] do not apply to[.] . . [a] corporation that provides health care services by licensed health care practitioners . . . which is wholly owned by one or more licensed health care practitioners . . . so long as one of the owners who is a licensed health care practitioner is supervising the business activities and is legally responsible for the entity's compliance with all federal and state laws.

Id.

Finally, a "[f]alse representation of a material fact in the license application or omission of any material fact from the application" is grounds for denial of a license application or revocation of a license.  Fla. Stat. § 408.815(1)(a).

**b.  Exemption Period**

Diaz and Perez obtained exemptions from mandatory clinic licensure from the AHCA in 2009 by representing that Hernandez owned both MSCF and MDCF.  Plaintiffs maintain that these representations were false, and therefore, the clinics unlawfully obtained payments from State Farm throughout this period.  Plaintiffs maintain that there is no genuine issue of material

fact that the clinics did not qualify for any applicable exemptions from the mandatory licensure requirement, as they were never wholly owned by Hernandez.

In viewing a Motion for Summary Judgment, the Court "must view all evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the non-moving party and resolve all reasonable doubts about the facts in favor of the non-movant." The Court notes that only <u>reasonable</u> doubts are to be resolved in favor of the non-moving party. With this standard in mind, the Court finds that there is no genuine issue of material fact regarding whether Hernandez had sufficient indicia of whole ownership over either clinic.

It is clear from the record that Hernandez (1) made no capital investment in either MDCF or MSCF; (2) received no rights to profit from either MDCF or MSCF nor had any risk of loss; (3) lacked the actual ability to sell either MDCF or MSCF or to cause it to cease operations; and (4) did not actively participate in the management and control of MDCF's or MSCF's business operations. See State Farm v. Silver Star, 739 F.3d 579, 585 (11th Cir. 2013) (setting forth several factors commonly tied to the ownership of a business entity). Further, the Court concludes that Hernandez had no involvement with the leases for MDCF or MSCF; did not participate in the preparation or filing of MDCF's or MSCF's tax returns; and had no ultimate authority over all personnel and compensation decisions related to MDCF and MSCF. See Fla. Stat. § 627.732(17) (defining "entity wholly owned" as having licensed health care practitioners who are "reflected as the business owners on the title or lease of the physical facility, filing taxes as the business owners, being account holders on the entity's bank account, being listed as the principals on all incorporation documents required by this state, and having ultimate authority over all personnel and compensation decisions relating to the entity").

Additionally, it is clear from the record that Dr. Hernandez (1) did not possess the keys to the clinics; (2) did not own the equipment located within either clinic; (3) did not have access/control of the bank accounts of either clinic; (4) did not have authority to retain counsel and hire accountants; (5) was not responsible for any vendor bills; (6) was not involved in the day-to-day operational activities of the clinics; (7) did not determine the amounts billed to insurers; (8) was not in control of either clinics' payroll; (9) did not maintain patient records; and (10) did not dictate office policies and decisions pertaining to pricing, advertising, personnel, and hours of operation of the clinics.  See Allstate Ins. Co. v. Schleub, 19 Fla. L. Weekly Supp. 561b (Fla. 9th Cir. Nov. 10, 2011).  Hernandez received a weekly salary and never supervised business affairs in either clinic.

In fact, the record evidence demonstrates that Diaz was the true owner of MSCF.  The record evidence demonstrates that Diaz: (1) was the only recipient of profit distributions from MSCF, see Diaz Dep. at 276, 283 (ECF No. 83-1); see also Checks from MSCF to Diaz (ECF 95-17); (2) was identified as the 100% owner of MSCF on her personal tax returns and the tax returns of the clinic, see Diaz Tax Returns (ECF Nos. 95-20, 95-21); MSCF Tax Returns (ECF Nos. 95-18, 95-19); (3) was personally taxed on MSCF's profits, id.; (4) was the only individual authorized to access the bank accounts for MSCF until January 30, 2012, see Diaz Dep. at 55 (ECF No. 86-1); (5) wrote checks for her personal tax bill out of the account of MSCF in the amount of $65,106.00 for the years 2009 through 2013, see Diaz Dep. at 272–73, 290–91, 306, 311 (ECF No. 83-1); Diaz Dep. at 357–58 (ECF No. 85-1); see also Diaz Tax Returns 2010–2013 (ECF Nos. 95-20, 95-21, 95-31, 95-33, 95-35); (6) wrote herself checks and withdrew cash from MSCF's account from 2009 through 2013, see Diaz Dep. at 350, 356, 365 (ECF No. 84-1); Diaz Dep. at 414–17, 420–22, 543 (ECF No. 85-1); see also Checks from MSCF to Diaz; (7)

11

directed the activities of and provided all information to the accountant, Milton Ares, see Diaz

Dep. at 299 (ECF No.83-1); Ares Dep. at 44 (ECF No. 76-1); (8) directed the activities of

attorney Neil Gonzalez,  see Retainer Agreement (ECF 95-22); Gonzalez Dep. at 81 (ECF No.

91-1); (9) directed that approximately $51,000.00 be paid to ADMM, an office supply company

that she solely owned, without Hernandez's knowledge, see Diaz Dep. at 497, 500–01, 506–07,

511–12 (ECF No. 85-1); (10) used MSCF's American Express Card to pay her personal

expenses, see Diaz Dep. at 39 (ECF No. 82-1); Diaz Dep. at 464–65 (ECF No. 85-1); (11) used a

BMW owned by MSCF as her personal vehicle, see Diaz Dep. at 462–64 (ECF No. 85-1); and

(12) controlled the day-to-day business operations of MSCF, see Defs.' SOF ¶ 37.

      The record further demonstrates that Perez was the true owner of MDCF.  The record

evidence demonstrates that Perez: (1) was the only recipient of profit distributions from MDCF,

see Perez Dep. at 273–76 (ECF No. 79-1); see also Perez and MDCF Tax Returns 2010–2012

(ECF Nos. 95-23, 95-24); (2) was identified as the 100% owner of MDCF on his personal tax

returns and the tax returns of the clinic, see MDCF's Tax Returns (ECF Nos. 95-23, 95-25); (3)

was personally taxed on MDCF's profits, see Perez and MDCF Tax Returns (ECF Nos. 95-23,

95-24, 95-25, 95-26); (4) was the only individual authorized to access the bank accounts and use

the debit card for MDCF, see Perez Dep. at 163, 169 (ECF No. 79-1); (5) directed the activities

of and provided all information to the accountant, Milton Ares, regarding MDCF, see Diaz Dep.

at 268 (ECF No. 83-1); Ares Dep. at 41 (ECF No. 76-1). (6) directed the activities of attorney

Neil Gonzalez regarding MDCF, see Retainer Agreement (ECF 95-27); Gonzalez Dep. at 81

(ECF No. 91-1); (7) was identified on the lease of MDCF from inception of the business, see

MDCF Lease (ECF No. 95-28); (8) was identified on the insurance policy from the inception of

the business, see Insurance Policy Application (ECF No. 95-29); and (9) controlled the day-to-day business operations of MDCF, see Defs.' SOF ¶ 50.

The evidence upon which Defendants rely in opposition to Plaintiffs' Motion can be quickly summarized. Defendants point to the deposition testimony and affidavits of Defendants Perez and Diaz where Defendants allege Hernandez owned the clinics. This evidence is self-serving and conclusory, and provides little, if any, actual evidence for the Court to consider. Defendants reference the appearance of Hernandez's name on the incorporation paperwork, AHCA paperwork, and stock certificates.[7] Defendants also point to the deposition of Alejandro Cura, an employee of MDCF, who stated that he "believed" Hernandez owned MDCF.

The Court finds that Defendants are unable to produce sufficient admissible evidence of a genuine dispute. The record before this Court clearly shows that Defendants Diaz and Perez were, in fact, the owners of MDCF and MSCF at all relevant times. It is evident that Defendants used Hernandez as a straw man in order to circumvent the HCCA's clinic licensure requirements. Considering the record evidence as a whole, the Court finds that no rational trier of fact could find that Hernandez wholly owned the clinics. Accordingly, there is no genuine issue of material fact that the clinics did not qualify for any applicable exemptions from the mandatory licensure requirement during the exemption period.[8]

---

[7] The Court notes that Defendants failed to attach these stock certificates to their Motion and do not provide citations to them elsewhere in the record.

[8] Defendants emphasize that State Farm's insureds did in fact receive medical services, and there is no evidence that these services were fraudulent or of substandard quality. Defs.' Resp. at 2. However, these points are irrelevant to the issue at hand. Defendants also maintain that State Farm has unclean hands, as State Farm knew or should have known from at least 2008 that Hernandez was in trouble with the criminal system and the medical licensing board. Here too, Defendants attempt to divert attention away from the relevant issues. Even if State Farm knew what the outcome of Hernandez's situation would be and failed to warn Defendants, it is unclear to the Court how this caused Defendants to falsely represent that Hernandez wholly owned the clinics. The Court finds these arguments to be without merit.

### c. Licensure Period

In May 2010, Perez and Diaz obtained clinic licenses for both MSCF and MDCF predicated upon representations to the AHCA that valid sales transactions had taken place for both clinics.  However, the Court finds that there is no genuine issue of material fact that (1) Hernandez had no ownership interest to convey; (2) no money was actually exchanged, although the contrary was represented in the closing documents; (3) the referenced bill of sale was never executed; (4) referenced insurance was never obtained; (5) referenced payments for operating expenses were never paid; and (6) referenced conditions pertaining to a lease were never satisfied.  See "Final Closing Documents" (ECF No. 95-5).

Defendants do not dispute the fact that the sale documents were not legitimate, that no money was exchanged, and that no sale actually occurred.  The Court concludes that Defendants were the actual owners of MSCF and MDCF at all relevant times.  Viewing all the evidence and all factual inferences reasonably drawn from the evidence, the Court finds that there is no genuine issue of material fact that the sale never took place, and relatedly, that the licenses subsequently obtained by the clinics were issued by the AHCA in reliance on fake documents and representations.

Licenses obtained in violation of a licensing statute or otherwise procured by fraud or deception have been found to be void ab initio.  See Hyang Soon Cho v. U.S. Atty. Gen., 578 Fed. App'x 931, 933 (11th Cir. 2014).  Here, the Court concludes that the licenses issued to MSCF and MDCF were invalid, as they both contained false and/or misleading statements.  Courts have "an affirmative duty to see the party violating public policy not benefit in any way as a result of his wrongdoing."  Cooper v. Paris, 413 So. 2d 772, 774 (Fla. 1st DCA 1982).  Accordingly, the Court finds the licenses to be void ab initio.

Having determined that Defendants unlawfully operated MSCF and MDCF during both the exemption period and the licensure period, the Court now turns to Plaintiffs' claims.

### d. Florida Deceptive and Unfair Trade Practices Act

To establish a claim under the FDUTPA, State Farm must show (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages. Galstaldi v. Sunvest Communities USA, LLC, 637 F. Supp. 2d 1045, 1056 (S.D. Fla. 2009). A deceptive act or practice is "one that is likely to mislead consumers and an unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." Washington v. LaSalle Bank Nat'l Ass'n, 817 F. Supp. 2d 1345, 1350 (S.D. Fla. 2011). Fraudulent conduct in the context of billing for PIP benefits qualifies as a deceptive act for purposes of FDUTPA. See State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc. ("PICC"), 427 Fed. Appx. 714, 723 (11th Cir. 2011), rev'd in part on other grounds sub nom. State Farm Mut. Auto. Ins. Co. v. Williams, 563 Fed. App'x 665 (11th Cir. 2014); see also State Farm Mut. Auto. Ins. Co. v. Comprehensive Physician Servs., Inc., 2014 WL 7070832, at *3 (M.D. Fla. 2014); State Farm Mut. Auto. Ins. Co. v. Physicians Grp. of Sarasota, L.L.C., 9 F. Supp. 3d 1303, 1312–13 (M.D. Fla. 2014); State Farm Mut. Auto. Ins. Co. v. Kugler, 2011 WL 4389915, at *12 (S.D. Fla. 2011).

Defendants argue that the statutory exemption set out in Florida Statute Section 501.212(4)(a) precludes State Farm from pursuing a claim for violations of the FDUTPA. The Court rejects this contention. Addressing the same argument, the Eleventh Circuit has stated:

> The express language of Fla Stat. § 501.212(4)(a) creates a specific exemption from suit under FDUPTA for "[a]ny person or activity regulated under laws administered by ... [t]he Office of Insurance Regulation of the Financial Services Commission." Florida courts resolve questions about the applicability of this provision by looking to the activity which is the subject of the lawsuit, and

15

> whether that activity is subject to the regulatory authority of the Office of Insurance Regulation.   See W.S. Badcock Corp. v. Myers, 696 So.2d 776, 782–83 (Fla. 1st DCA 1996). Because the conduct of which State Farm complains in this lawsuit is not a type regulated by the Office of Insurance Regulation, the exemption of Fla. Stat. § 501.212(4)(a) does not apply.

Physicians Injury Care Ctr., Inc., 427 F. App'x at 723.

The Court finds that there is no genuine issue of material fact as to whether Defendants violated the FDUTPA.  Defendants engaged in unfair and deceptive acts and practices in the conduct of their trade and commerce by unlawfully operating medical clinics, in violation of Florida law.[9]  Fla. Stat. § 408.804.  These deceptive acts and practices resulted in harm to Plaintiffs, Plaintiffs' insureds, and the public as a whole.  See Joint Stipulation of the Parties (ECF No. 70) (setting forth amounts paid to Defendants by State Farm).  Accordingly, the Court finds summary judgment is appropriate on State Farm's claim under the FDUTPA.

**e.   Unjust Enrichment**

In order to establish the elements of a cause of action for unjust enrichment, State Farm must show that: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without

---

[9] In their Response to Plaintiffs' Motion for Summary Judgment, Defendants contend that State Farm's interpretation of the term "lawfully provided," as used in Florida's No-Fault Law, contravenes generally accepted standards of statutory interpretation and the intent of the legislature.  The Court finds this argument to be without merit.  Florida law defines the term "lawful" to mean in substantial compliance with all relevant applicable criminal, civil, and administrative requirements of state and federal law related to the provision of medical services or treatment.  See Fla. Stat. § 627.732(11).  Further, the HCCA clearly states that "all charges or reimbursement claims made by or on behalf of a clinic that is required to be licensed under this part, but that is not so licensed . . . are unlawful charges, and therefore are noncompensable and unenforceable."  Fla Stat. § 400.9935(3).  Additionally, the Eleventh Circuit has affirmed State Farm's interpretation of the terms "wholly owned" and "lawfully provided," finding that a clinic that does not qualify for the "wholly owned" exemption, and does not otherwise have a license, is operating unlawfully under Florida law.  Silver Star, 739 F.3d at 582, 585.

paying the value thereof to the plaintiff.  Altamonte Springs Diagnostic Imaging, Inc., 2011 WL 6450769, at *5.

Defendants maintain that they provided adequate consideration for payment, and therefore, State Farm cannot succeed on its claim for unjust enrichment.  However, this argument is based on a "flawed interpretation of the relevant statutes."  State Farm Fire & Cas. Co. v. Silver Star Health & Rehab Inc., No. 6:10-CV-1103-ORL-31, 2011 WL 6338496, at *5 (M.D. Fla. Dec. 19, 2011) aff'd sub nom. State Farm Fire & Cas. Co. v. Silver Star Health & Rehab, 739 F.3d 579 (11th Cir. 2013).  Florida law clearly states that a provider can refuse payment for services unlawfully rendered.  Fla. Stat. § 627.736(5)(b)(1)(b).  As a result of Defendants' conduct, Plaintiffs paid claims which it was statutorily entitled to deny.  Accordingly, it would be inequitable to allow Defendants to retain those benefits, regardless of whether those services were medically necessary.

Here, the Court finds that State Farm conferred benefits on Defendants by making payments to them pursuant to illegal claims for benefits for its insureds.  Defendants voluntarily accepted and retained these benefits from State Farm, despite their knowledge that the services purportedly rendered by them were not "lawfully provided" as required by Florida law. Defendants' retention of these benefits was wrongful, as established supra, pp. 9–13.  The Court finds that it would be unjust under these circumstances to allow Defendants to continue to retain these benefits despite their unlawful conduct.  Accordingly, the Court finds summary judgment is appropriate on State Farm's claim of unjust enrichment.

**f.  Declaratory Judgment**

While Defendants assert that a declaratory action is not the appropriate vehicle to resolve the question of whether State Farm properly refused to pay Defendants' outstanding invoices, the

17

law clearly states otherwise.  The Florida Supreme Court has held that "an insurer may pursue a declaratory action which requires a determination of the existence or nonexistence of a fact upon which the insurer's obligations under an insurance policy depend."  Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc., 657 F. Supp. 2d 1279, 1292–93 (M.D. Fla. 2009) (quoting Higgins v. State Farm Fire & Casualty Co., 894 So.2d 5, 12 (Fla. 2004)).

Defendants have engaged in unlawful conduct with respect to MSCF and MDCF by operating two medical clinics, MDCF and MSCF, without satisfying the mandatory licensure requirements.  The Court finds there is no issue of material fact that none of the services for which Defendants submitted bills to State Farm were "lawfully provided" during the relevant time period.  This period is the time from November 30, 2009, as to MSCF, and from June 8, 2009, as to MDCF.  Accordingly, the Court finds it is appropriate to issue a declaratory judgment confirming that State Farm is not obligated to pay any of Defendants' bills to the extent they remain unpaid.

### g.  Defendants' Motion for Summary Judgment

In their Motion for Summary Judgment, Defendants maintain that (1) Hernandez wholly owned MSCF outright and wholly owned MDCF between February 2009 and February 13, 2010, Defs.' Mot. at 6–8; (2) State Farm's interpretation of "lawfully provided," as used in Florida's No-Fault Law, contravenes generally accepted standards of statutory interpretation and the intent of the legislature, id. at 9–11; (3) the statutory exemption set out in section 501.212(4)(a), Florida Statutes, precludes State Farm from pursuing a claim for violations of the FDUTPA, id. at 11–14; (4) Defendants provided adequate consideration for payment, and therefore, State Farm cannot succeed on its claim for unjust enrichment, id. at 14–16; (5) a declaratory action is not the appropriate vehicle to resolve the question of whether State Farm properly refused to pay

18

Defendants' outstanding invoices, id. at 16–17.  However, the majority of these arguments function as responses to Plaintiffs' Motion for Summary Judgment and do not provide any support for entry of summary judgment in Defendants' favor.[10]  Further, the Court explicitly rejects Defendants' assertion that Hernandez wholly owned MSCF and MDCF during the relevant periods.  See supra pp. 9–11.

Defendants also assert that they have established clear cases of breach of contract, account state, open account, service provided, and unjust enrichment against Plaintiffs, and therefore, entry of summary judgment on Defendant's Counterclaims is appropriate.  Id. at 17–18.  However, these assertions are not supported by any facts, and merely state that Defendants have established the elements of their claims.  Defs.' Mot. at 17–18.  Viewing the evidence in the light most favorable to State Farm, as the non-moving party, the Court finds no basis supporting entry of summary judgment in Defendants' favor.  Furthermore, as the Court finds that State Farm is not obligated to pay any of the unpaid bills due to Defendants because the services were unlawfully provided, the Court finds no basis for Defendants' Counterclaims.

Therefore, Defendants' Motion for Summary Judgment is DENIED.

## IV.    CONCLUSION

For the foregoing reasons, it is hereby ORDERED AND ADJUDGED that Plaintiffs' Motion for Summary Judgment (ECF No. 99) is GRANTED.  It is further ORDERED AND ADJUDGED that Defendants' Motion for Summary Judgment (ECF No. 102) is DENIED. Defendants' Counterclaims (ECF No. 36) are DISMISSED WITH PREJUDICE.

Accordingly, it is hereby ORDERED AND ADJUDGED that:

---

[10] The Court has addressed these arguments in its discussion of Plaintiffs' Motion insofar as they function as arguments against granting summary judgment in Plaintiffs' favor.  See supra pp. 9–13.

1. Defendants are hereby ORDERED to pay $366,803.80 to Plaintiff State Farm Mutual for services regarding State Farm Mutual's insureds rendered by MSCF.

2. Defendants are hereby ORDERED to pay $433,931.58 to Plaintiff State Farm Mutual for services regarding State Farm Mutual's insureds rendered by MDCF.

3. Defendants are hereby ORDERED to pay $100,318.56 to Plaintiff State Farm Fire for services regarding State Farm Fire's insureds rendered by MSCF.

4. It is ORDERED AND ADJUDGED that Plaintiff State Farm Mutual is not obligated to pay $86,067.00 to Defendant MDCF for services regarding State Farm Mutual's insureds which remain outstanding and unpaid.

5. It is ORDERED AND ADJUDGED that Plaintiff State Farm Mutual is not obligated to pay $5,827.00 to Defendant MSCF for services regarding State Farm Mutual's insureds which remain outstanding and unpaid.

6. It is further ORDERED AND ADJUDGED that State Farm is not obligated to pay claims that may be submitted for services provided at MSCF or MSDF in the future which have not yet become due if said claims are based on the same billing practice and procedure specifically identified above as having been committed by Defendants.

The Clerk of Court is directed to CLOSE this case.  All pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 8th  day of May, 2015.


_____
K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

cc:      All counsel of record

20